UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8              UNITED STATES  DISTRICT COURT

9                  Northern District of California

10                    San Francisco Division

11   LIFENG WANG,                         No. C12-06367 LB

12                    Petitioner,         **ORDER (1) DENYING
                                          PETITIONER'S MOTION FOR**
13         v.                             **SUMMARY JUDGMENT AND (2)
                                          GRANTING RESPONDENTS'**
14   ALEJANDRO MAYORKAS, Director of      **MOTION FOR SUMMARY**
     United States Citizenship and Immigration   **JUDGMENT**
     Services, et al.,
15
16                    Respondents.        [Re: ECF Nos. 27, 28]
     _____/

17                      **INTRODUCTION**

18       Petitioner Lifeng Wang has sued respondents Alejandro Mayorkas, Director of the United States

19   Citizenship and Immigration Services ("USCIS"), and Robin Barrett, Director of the San Francisco

20   Field Office of USCIS, and asks the court to review USCIS's denial of her application to become a

21   naturalized United States citizen.  USCIS denied her application on the ground that her 2005

22   conviction for trademark counterfeiting under 18 U.S.C. § 2320(a) was an aggravated felony under §

23   1101(a)(43)(M)(i) of the Immigration and Nationality Act because it involved fraud or deceit and a

24   loss to her victim in excess of $10,000.  This aggravated felony, USCIS concluded, precludes her

25   from establishing her good moral character, a requirement for naturalization.

26       Ms. Wang and Respondents both now move for summary judgment on the issue of whether Ms.

27   Wang's trademark counterfeiting conviction is an aggravated felony under the INA.  The court holds

28   that it is an aggravated felony and thus **DENIES** Ms. Wang's motion and **GRANTS** Respondents'

1  motion.

2                                      **STATEMENT**

3      Ms. Wang is a native and citizen of China who entered the United States as a conditional lawful

4  permanent resident on February 28, 2001.  Petition, ECF No. 1, ¶ 6; Joint Statement of Undisputed

5  Facts ("JSUF"), ECF No. 27-1, ¶¶ 1-2; Tse Declaration, Ex. A (Ms. Wang's conditional resident

6  card, Chinese passport, and current permanent resident card), ECF No. 27-4.[1]  USCIS subsequently

7  removed the condition on her permanent residence status on June 1, 2006.  Petition, ECF No. 1, ¶ 6;

8  Vuong Declaration, Ex. A ("N-336 Denial"), ECF No. 28-3 at 1.

9      Ms. Wang has a 2005 felony conviction for trafficking in counterfeit goods in violation of 18

10  U.S.C. § 2320(a).  *See* JSUF, ECF No. 27-1, ¶ 3; Vuong Declaration, Ex. C ("Judgment"), ECF No.

11  28-5 at 1, & D ("Plea Agreement"), ECF No. 28-6.  More specifically, in December 2003, Ms.

12  Wang pleaded guilty to a felony information charging one count of trafficking in counterfeit goods

13  in violation of 18 U.S.C. § 2320(a).  *See* Plea Agreement.  The superseding information charges the

14  following:

15      On or about July 27, 1999, in the Northern District of California, and elsewhere, the defendant
        [Alice Wang] . . . did intentionally traffic in goods and knowingly use counterfeit marks in and
16      in connection with such goods, to wit, 6 counterfeit units of Microsoft Windows 95, by
        knowingly transporting, transferring, and disposing of them for $138, in violation of Title 18,
17      United States Code, Section 2320(a).

18  *United States v. Wang*, No. CR 02-20049 RMW, Dkt. 111 (N.D. Cal. Nov. 21, 2003).

19      In the factual basis of her plea agreement, Ms. Wang admitted the specific sale charged in the

20  superseding information: the sale on July 27, 1999 of 6 counterfeit units of Microsoft Windows 95

21  for $138.  Plea Agreement, ECF No. 28-6, ¶ 2.  She also admitted the following additional facts.

22  She admitted that during the period from July 1999 to April 2002, she operated two software

23  distribution companies and intentionally trafficked in counterfeit software programs and

24  documentation that bore counterfeit Microsoft marks (including Windows 98, Windows NT Server,

25  and Office 2000 Professional Edition).  *Id.*  She admitted that she also purchased for resale

26  Symantec software products (including Norton Antivirus 2002, Norton Personal Firewall 2002, and

27  _____

28      [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
    generated page numbers at the top of the document.

C12-06367 LB
ORDER                                            2

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

WinFax Pro V10.0) from a known distributor of counterfeit software at prices reflecting counterfeit goods. *Id.* She admitted that she supervised three employees of her companies, each of whom knowingly participated in the criminal trafficking, and she admitted that she thus was an organizer and leader of the criminal activity. *Id.* She agreed that her role in the offense resulted in a two-level increase in her guidelines calculation under U.S.S.G. § 3B1.1. *Id.*, ¶¶ 2, 9.

As to the value of the goods that she sold, Ms. Wang admitted that she was responsible for selling counterfeit products with counterfeit marks valued at $446,164, and she agreed that $446,164 was the amount that should be used to calculate loss under the Sentencing Guidelines. *Id.* The $446,164 sum included the July 1999 sale of "6 counterfeit copies of Microsoft Windows 95 for $138" (the specific sale charged in the information), $37,775 in counterfeit sales to undercover agents and confidential informants, $93,473 in counterfeit sales by her two companies to an entity named DA Com, and $314,778 in counterfeit products seized during the execution of search warrants at her businesses in April 2002. *Id.*, ¶ 2. She also agreed that she received $37,775 in proceeds from the sale of counterfeit goods to undercover agents and confidential informants and stipulated to an entry of forfeiture of $37,775 against her. *Id.*, ¶ 10. The plea agreement also was a cooperation agreement that required her to cooperate with the government regarding her own case and other investigations. *Id.*, ¶ 12.

Ms. Wang was sentenced on September 26, 2005, to two months' prison, three years' supervised release with standard and eight special conditions of supervision, restitution of $93,611 (the sum of the $138 sale of the 6 copies of Windows 95 and the $93,473 in sales to DA Com) payable to Microsoft Corporation, and a $100 special assessment fee. JSUF, ECF No. 27-1, ¶ 3; Judgment, ECF No. 28-5 at 4-5. The court also entered a forfeiture money judgment of $37,775. Judgment, ECF No. 28-5 at 7.

On July 9, 2007, the district court found that Ms. Wang violated the terms of her supervised release by (a) having contact with her co-defendant, (b) failing to report money transactions exceeding $500, (c) failing to report her current address on her monthly reports to U.S. Probation, and (d) failing to work regularly at a lawful occupation. Petition, ECF No. 1, ¶ 8; JSUF, ECF No. 27-1, ¶ 6; Vuong Declaration, Ex. F ("Judgment On Supervised Release Violation"), ECF No. 28-8

at 1.  The district court revoked her supervised release and sentenced her to 4 months' custody followed by supervised release until February 27, 2009.  Petition, ECF No. 1, ¶ 8; JSUF, ECF No. 27-1, ¶ 6; Probation Conviction Documents, ECF No. 28-8 at 3.  She completed her probation on February 27, 2009.  Petition, ECF No. 1, ¶ 9; JSUF, ECF No. 27-1, ¶ 7.

On February 16, 2007, the Department of Homeland Security ("DHS") instituted removal proceedings against Ms. Wang.  Petition, ECF No. 1, ¶ 10; JSUF, ECF No. 27-1, ¶ 8; Vuong Declaration, Ex. E ("Notice to Appear"), ECF No. 28-7.  DHS alleged that she was removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien who has been convicted of a crime involving moral turpitude.  JSUF, ECF No. 27-1, ¶ 8; Notice to Appear, ECF No. 28-7.  The immigration judge ultimately granted Ms. Wang's application for a waiver of removability under 8 U.S.C. § 1182(h) and terminated the removal proceedings on March 18, 2009.  Petition, ECF No. 1, ¶ 10; JSUF, ECF No. 27-1, ¶ 9.

On October 1, 2010, Ms. Wang applied for naturalization by filing an Form N-400, Application for Naturalization.  Petition, ECF No. 1, ¶ 12; JSUF, ECF No. 27-1, ¶ 10.  USCIS denied her application on April 21, 2011, finding that her September 26, 2005 conviction under 18 U.S.C. § 2320(a) was an aggravated felony under § 1101(a)(43)(M)(i) of the INA because it was a crime involving fraud and a loss in excess of $10,000, and thus precludes her from establishing her good moral character, a requirement for naturalization.  Petition, ECF No. 1, ¶ 12; JSUF, ECF No. 27-1, ¶ 11; Vuong Declaration, Ex. B ("N-400 Denial"), ECF No. 28-4 at 2-3.  USCIS also noted that her violation of four conditions of her probation in 2007 showed a continuous disregard for the law and a lack of good moral character.  N-400 Denial, ECF No. 28-4 at 3.

Ms. Wang timely filed with USCIS a Form N-336, Request for Hearing on a Decision in Naturalization Proceedings.  Petition, ECF No. 1, ¶ 13; JSUF, ECF No. 27-1, ¶ 12.  On August 22, 2012, USCIS reaffirmed its decision to deny her application for naturalization.  Petition, ECF No. 1, ¶ 15; JSUF, ECF No. 27-1, ¶ 13; N-336 Denial, ECF No. 28-3 at 1.

On December 14, 2012, Ms. Wang timely filed a Petition in this court requesting de novo judicial review of USCIS's decision.  Petition, ECF No. 1.  On October 31, 2013, both Ms. Wang and Respondents moved for summary judgment on the issue of whether Ms. Wang's 2005 trademark

counterfeiting conviction constitutes an aggravated felony under § 1101(a)(43)(M)(i) of the INA that

bars her from naturalizing.  Ms. Wang's Motion, ECF No. 27; Respondents' Motion, ECF No. 28.

Both Ms. Wang and Respondents filed oppositions to each other's motions.  Respondents'

Opposition, ECF No. 31; Ms. Wang's Opposition, ECF No. 32.  Neither Ms. Wang nor Respondents

filed replies.  *See* Docket.  The court held a hearing on the motions on December 12, 2013.

12/12/2013 Minute Order, ECF No. 37.

**ANALYSIS**

**I. LEGAL STANDARD**

   **A.  Jurisdiction and Standard of Review**

   Pursuant to 8 U.S.C. § 1421(c), the court has jurisdiction to conduct a de novo review of a final

determination of a naturalization application and makes its own findings of fact and conclusions of

law.

   **B.  Summary Judgment**

   A motion for summary judgment should be granted if there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the

outcome of the case. *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine if there

is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.* at 248-

49.

   The party moving for summary judgment has the initial burden of informing the court of the

basis for the motion and identifying those portions of the pleadings depositions, answers to

interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

must either produce evidence negating an essential element of the nonmoving party's claim or

defense or show that the nonmoving party does not have enough evidence of an essential element to

carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

*Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076

(9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

2    (quoting *Celotex Corp.*, 477 U.S. at 325).

3        If the moving party meets its initial burden, the burden shifts to the non-moving party, which

4    must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and

5    showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire*,

6    210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076.  If the non-moving party does not produce evidence

7    to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *See*

8    *Celotex*, 477 U.S. at 323.

9        In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

10   viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

11   *Radio Corp.*, 475 U.S. 574, 587 (1986).

12   **C. Naturalization**

13       To be eligible for naturalization, the INA requires that an applicant establish that he:

14   > (1) immediately preceding the date of filing his application for naturalization has
15   > resided continuously, after being lawfully admitted for permanent residence, within
     > the United States for at least five years and during the five years immediately
16   > preceding the date of filing his application has been physically present therein for
     > periods totaling at least half of that time, and who has resided within the State or
17   > within the district of the Service in the United States in which the applicant filed the
     > application for at least three months, (2) has resided continuously within the United
18   > States from the date of the application up to the time of admission to citizenship, and
     > (3) <u>during all the periods referred to in this subsection has been and still is a person of</u>
     > <u>good moral character</u>, attached to the principles of the Constitution of the United
19   > States, and well disposed to the good order and happiness of the United States.

20   8 U.S.C.A. § 1427(a) (emphasis added).

21       The parties agree that Ms. Wang satisfies the first two naturalization requirements, but they

22   disagree about whether she is a person of good moral character.  It is her burden to show beyond a

23   preponderance of the evidence that she is.  8 C.F.R. § 316.2(b); *Berenyi v. Dist. Dir., INS*, 385 U.S.

24   630, 637 (1967) ("[I]t has been universally accepted that the burden is on the alien applicant to show

25   his eligibility for citizenship in every respect."); *United States v. Hovsepian*, 359 F.3d 1144, 1168

26   (9th Cir. 2004) ("*Hovsepian I*") (applicants bore burden to show that they have been and are persons

27   of good moral character).

28       While the INA does not define "good moral character," it does list specific characteristics that

1   preclude a finding of good moral character.  *See* 8 U.S.C. § 1101(f); *Hovsepian I*, 359 F.3d at 1166.[2]

2   In particular, an applicant lacks good moral character, and cannot ever demonstrate good moral

3   character, if the applicant has been convicted, on or after November 29, 1990, of an "aggravated

4   felony" as defined by section 8 U.S.C. § 1101(a)(43).  8 U.S.C. § 1101(f)(8); 8 C.F.R. §

5   316.10(b)(1)(ii); *see Chan v. Gantner*, 464 F.3d 289, 294 (2d Cir. 2006).  Section 1101(a)(43), in

6   turn, defines an "aggravated felony" to include an offense that "involves fraud or deceit in which the

7   loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i).

8         To determine whether a conviction qualifies as an aggravated felony under the INA, the

9   court first applies the "categorical approach" discussed in *Taylor v. United States*, 495 U.S. 575

10  (1990).  *See Penuliar v. Mukasey*, 528 F.3d 603, 608 (9th Cir. 2008) (citing *Chang v. I.N.S.*, 307

11  F.3d 1185, 1189 (9th Cir. 2002)); *see also Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1131 n.9 (9th

12  Cir. 2007) (stating that *Taylor*'s "analysis applies in the immigration context since the INA uses

13  similar language" to the statute considered in *Taylor*).  Under this approach, the court must "look to

14  the statute under which the person was convicted and compare its elements to the relevant definition

15  of an aggravated felony in 8 U.S.C. § 1101(a)(43)."  *Penuliar*, 528 F.3d at 608.  "[A]n offense

16  qualifies as an aggravated felony 'if and only if the full range of conduct covered by the [criminal

17  statute] falls within the meaning of that term.'"  *Id.* (quoting *United States v. Baron-Medina*, 187

18  F.3d 1144, 1146 (9th Cir. 1999)); *see also Kawashima v. Holder*, 522 U.S. ----, 132 S.Ct. 1166, 1172

19  (2012) ("If the elements of the offense establish that [the petitioners] committed crimes involving

20  fraud or deceit, then the first requirement of [8 U.S.C. § 1101(a)(43)(M)(i)] is satisfied").

21        But "when the statute of conviction reaches both conduct that would constitute an aggravated

22  felony and conduct that would not," the court applies the "modified categorical approach."

23  *Penuliar*, 528 F.3d at 608 (citing *Chang*, 307 F.3d at 1189).  Under this approach, the court conducts

24  "'a limited examination of documents in the record of conviction to determine if there is sufficient

25  evidence to conclude that a defendant was convicted of the elements of the generically defined

26

27         [2] The list of characteristics is non-exhaustive, as 8 U.S.C. § 1101(f) further provides: "The

28  fact that any person is not within any of the foregoing classes shall not preclude a finding that for
other reasons such person is or was not of good moral character."  *See Navarete v. Holder*, No. CV-
F-09-1255 LJO GSA, 2010 WL 1611141, at *3 (E.D. Cal. Apr. 20, 2010).

1   crime.'" *Id.* (quoting *Chang*, 307 F.3d at 1189).  The limited universe of judicial documents that the

2   court can consider includes the indictment or information, the plea agreement, the plea colloquy, and

3   the judgment, and the court may take into account only the facts on which the defendant's

4   conviction necessarily rested.  *Sanchez-Avalos v. Holder*, 693 F.3d 1011, 1014 (9th Cir. 2012);

5   *Huerta-Guevera v. Ashcroft*, 321 F.3d 883, 888 (9th Cir. 2003).  The court does not, however, "look

6   [beyond the facts contained in the limited universe of the record of conviction]  to the particular

7   facts underlying the conviction."  *Penuliar*, 528 F.3d at 608 (quoting *Lara-Chacon v. Ashcroft*, 345

8   F.3d 1148, 1154 (9th Cir. 2003)).

9   **II.  APPLICATION**

10      The parties dispute whether Ms. Wang's 2005 trademark counterfeiting conviction is an

11  aggravated felony under § 1101(a)(43)(M)(i) of the INA.  If it is an aggravated felony, then Ms.

12  Wang cannot establish that she is a person of good moral character who may naturalize.  *See* 8

13  U.S.C. § 10010(f)(8); 8 C.F.R. § 316.10(b)(1)(ii); *Chan*, 464 F.3d at 294.  Section 1101(a)(43)(M)(i)

14  defines an "aggravated felony" to include an offense that "involves fraud or deceit in which the loss

15  to the victim or victims exceeds $10,000."  As explained below, the court finds that Ms. Wang's

16  conviction involved fraud or deceit and her victims lost more than $10,000.  Therefore, her

17  conviction is an aggravated felony under the INA.

18  **A.  Under the "Categorical Approach," a Violation of 18 U.S.C. § 2320(a) "Involves Fraud**

19      **or Deceit"**

20      As stated above, to determine whether her conviction is an aggravated felony, the court first

21  must apply the "categorical approach."  Ms. Wang pleaded guilty to, and was convicted of, violating

22  18 U.S.C. § 2320(a).  The elements of the offense are as follows: the defendant (1) trafficked in

23  goods and services, (2) did so intentionally, (3) used  a "counterfeit mark on or in connection with

24  such goods or services," and (4) knew that the mark was counterfeit.  18 U.S.C. § 2320(a) (1999)[3];

25

26          [3] The version of the statute that applies is that which was in effect at the time of the offense.

27  18 U.S.C. § 2320(a) has been amended several times since Ms. Wang's conduct, but the basic
    statute, the statutory elements, and penalties remain the same.  *See, e.g.*, Pub. L. 109-181, §§ 1(b),

28  2(b), 120 Stat. 285, 288 (Mar. 16, 2006); Pub. L. 110-403, Title II, § 205, 122 Stat. 4261 (Oct. 13,
    2008); Pub. L. 112-81, Div. A, Title VIII, § 818(h), 125 Stat. 1497 (Dec. 31, 2011).

1    *see United States v. Giles*, 213 F.3d 1247, 1249 (10th Cir. 2000) (citing *United States v. Sultan*, 115

2    F.3d 321, 325 (5th Cir. 1997)); Plea Agreement, ECF No. 28-6, ¶ 1 (reciting these elements).  The

3    statute defines a "counterfeit mark," in relevant part, to include "a spurious mark . . . (i) that is used

4    in connection with trafficking in goods or services; (ii) that is identical with, or substantially

5    indistinguishable from, a mark registered for those goods or services on the principal register in the

6    United States Patent and Trademark Office and in use, whether or not the defendant knew such mark

7    was so registered; and (iii) <u>the use of which is likely to cause confusion, to cause mistake, or to</u>

8    <u>deceive . . . .</u>"  18 U.S.C. § 2320(e) (1999) (defining "counterfeit mark") (emphasis added); *see also*

9    18 U.S.C. § 2320(f) (2013) (renumbered current definition of "counterfeit mark" remains

10   substantially the same).  The maximum penalties for an individual not previously convicted of an

11   offense under 18 U.S.C. § 2320(a) are 10 years in prison, a $2 million fine, restitution, supervised

12   release of three years, forfeiture, and a special assessment of $100.  18 U.S.C. §§ 2320(b), 3013,

13   3583; *see also* Plea Agreement, ECF No. 28-6, ¶ 1 (advises of these maximum penalties and also the

14   possible consequence of deportation).

15       Ms. Wang argues that her conviction is not an aggravated felony under the categorical approach

16   because 18 U.S.C. § 2320(a)—in particular, the definition of "counterfeit mark" it incorporates—is

17   "divisible."  *See* Ms. Wang's Motion, ECF No. 27 at 4-7.[4]  She argues that the categorical approach

18

19        [4] Ms. Wang also briefly argues that a finding that her conviction is an aggravated felony
20   would be contrary to the Immigration Judge's grant of her application for a waiver of removability
     under 8 U.S.C. § 1182(h) and termination of the removal proceedings.  Ms. Wang's Motion, ECF
21   No. 27 at 8-9.  The granting of her application for a waiver of removability, however, has nothing to
     do with whether she is allowed to naturalize.  As Respondents point out, the Ninth Circuit has cited
22   with approval the Second Circuit's statement in *Chan v. Gantner* that "no authority supports the
     proposition that the government is foreclosed by a waiver of deportation from considering a
23   conviction when determining the unrelated question of fitness for naturalization."  *Alocozy v.*
     *USCIS*, 704 F.3d 795, 797-98 (9th Cir. 2012) (quoting *Chan v. Gantner*, 464 F.3d 289, 294 (2d Cir.
24   2006) (per curiam)).  Respondents also point out that at the time DHS placed Ms. Wang in removal
     proceedings, Ninth Circuit law required that the statute of conviction include a monetary element
25   establishing the $10,000 loss to the victim.  *See Kawashima v. Mukasey*, 530 F.3d 111 (9th Cir.
     2008); *Li v. Ashcroft*, 389 F.3d 892 (9th Cir. 2004).  Three months after the Immigration Judge
26   granted Ms. Wang's waiver of removal, and as discussed later in this order, the Supreme Court in
     *Nijhawan v. Holder* overturned the Ninth Circuit's rulings, holding that the $10,000 loss to the
27   victim was not an element and instead applies to the particular circumstances in which an offender
28

UNITED STATES DISTRICT COURT
For the Northern District of California

in inappropriate here because it is possible for a defendant to be convicted under 18 U.S.C. §

2320(a) for using a "spurious mark" that is likely either "to cause confusion," "to cause mistake," or

"to deceive." *Id.* at 6.  Causing confusion or causing mistake, she argues, does not involve fraud or

deceit, so 18 U.S.C. § 2320(a) criminalizes conduct other than that "involv[ing] fraud or deceit in

which the loss to the victim or victims exceeds $10,000." Ms. Wang's Motion, ECF No. 27 at 5-6.

In other words, the "full range of conduct" covered by 18 U.S.C. § 2320(a) does not fall within the

definition of an aggravated felony at issue here. *See Penuliar*, 528 F.3d at 608.  Ms. Wang reiterated

this argument at the December 12, 2013 hearing.

The federal courts have not addressed Ms. Wang's argument that the definition of a "counterfeit

mark" is divisible and that causing confusion or mistake does not necessarily involve fraud or

deceit.[5]  To support her argument, Ms. Wang cites to opinions holding that post-sale confusion by

the general public, rather than by the purchaser of counterfeit goods or services, can be a basis for

liability under 18 U.S.C. § 2320(a).  Ms. Wang's Motion, ECF No. 27 at 6-7 (citing *United States v.*

*Foote*, 413 F.3d 1240, 1246 (10th Cir. 2005); *United States v. Yamin*, 868 F.2d 130, 132 (5th Cir.

1989); *United States v. Torkington*, 812 F.2d 1347, 1352-53 (11th Cir. 1987)).  She specifically cites

Footnote 7 from *Torkington*, in which the Eleventh Circuit noted that

> under early versions of § 2320 the defendant was not liable unless he had used the
> counterfeit mark with the *intent* to deceive or defraud. S. 875, 98th Cong., 1st Sess.
> (March 22, 1983); H.R. 2447, 98th Cong., 1st Sess. (April 7, 1983).  Congress
> omitted this requirement from subsequent versions of the section.  We conclude that

commited a fraud or deceit crime.  557 U.S. 29, 32, 40 (2009).  Respondents also note that the
finding of eligibility for a waiver under 8 U.S.C. § 1182(h) protects Ms. Wang against any future
possibility of removal for her trafficking conviction.  Respondent's Motion, ECF No. 28 at 18
(citing *Amezcua v. INS*, 6 F.3d 646, 647 (9th Cir. 1993) (per curiam).

[5] A district court in the Western District of Pennsylvania found that 18 U.S.C. § 2320(a) is an
aggravated felony under § 1101(a)(43)(M) the INA.  *See Dolgosheev v. USCIS*, No. 07-1019, 2008
WL 2950766, at *9-*11 (W.D. Pa. July 25, 2008).  The court concluded that the plaintiff's
conviction for trafficking in counterfeit goods and services under 18 U.S.C. § 2320(a) included an
element of "deceit" because he used "counterfeit" marks, and the common definition of
"counterfeit" is "to unlawfully force, copy, or imitate without a legal right to do so and with the
purpose of deceiving or defrauding." *See id.* at *9.  But it did not grapple with the statutory
"divisible" argument that Ms. Wang makes here.  *See id.*  It also pre-dates the Supreme Court's
decision in *Kawashima v. Holder*, 522 U.S. ----, 132 S.Ct. 1166 (2012).

UNITED STATES DISTRICT COURT
For the Northern District of California

> Congress omitted this requirement because such a requirement would undermine the section's essential goal of protecting trademark holders as trademark holders are injured by counterfeits even when consumers are not defrauded. *See* H.R. Rep. No. 997, at 5-6. In particular, we conclude that Congress in removing the intent requirement shifted the focus of the § 2320 inquiry from a concern solely for the direct purchasers of counterfeit goods to a concern for protecting trademark holders' interests. Our interpretation of § 2320(d)(1)(A)(iii) serves this latter concern.

*Torkington*, 812 F.2d at 1353 n.7 (emphasis in original). Although she does not say in her motion, presumably Ms. Wang wishes to focus the court's attention on the Eleventh Circuit's statement that "trademark holders are injured by counterfeits even when consumers are not defrauded." But the point of (and the context for) the footnote is the statement that defendants do not have to "intend" to deceive or defraud the purchaser because trademark holders are still harmed even when the purchaser knows that the goods or services are counterfeit.[6] *Id.* at 1353 & n.7. This reading makes sense given the Eleventh Circuit's ruling that post-sale confusion by the general purchasing public can be a basis for liability. It also means that the Eleventh Circuit's statement bears little on the issue of whether all of the conduct covered by 18 U.S.C. § 2320(a) is fraudulent or deceitful.

Nor is the fact that the definition of a "counterfeit mark" distinguishes "spurious marks" that are likely "to cause confusion" or "to cause mistake" from those that are likely "to deceive" dispositive of the issue. Indeed, the Supreme Court recently has explained that aggravated felonies under § 1101(a)(43)(M)(i) are "not limited to offenses that include fraud or deceit as formal elements. Rather, [§ 1101(a)(43)(M)(i)] refers more broadly to offenses that 'involv[e]' fraud or deceit—meaning offenses with elements that necessarily entail fraudulent or deceitful conduct." *Kawashima*, 132 S. Ct. at 1172.

The Ninth Circuit has not addressed whether 18 U.S.C. § 2320(a) is an aggravated felony under the INA. It has, however, held that California's similar criminal trademark counterfeiting statute is an aggravated felony that is inherently fraudulent and thus is a crime involving moral turpitude. *See Tall v. Mukasey*, 517 F.3d 1115 (9th Cir. 2008). The court finds the opinion instructive and follows its reasoning here.

---

[6] The court notes that Ms. Wang accidentally failed to italicize the word "intend" in the footnote when she quoted it in her motion, thus de-emphasizing the word's importance to the footnote's meaning.

1    In 2003 and 2004, Mr. Tall, a native and citizen of Senegal who had been residing in the United

2    States since 1981 without a visa, pleaded guilty to several violations of California's criminal

3    trademark counterfeiting statute, California Penal Code § 350, and was sentenced to prison. *Id.* at

4    1117-18.[7] After he completed his prison sentence in 2005, DHS instituted removal proceedings

5    against him and charged him with being inadmissible because he had been convicted of a crime

6    involving moral turpitude under § 1182(a)(2)(A)(i)(I) the INA. *Id.* at 1118. The Immigration Judge

7    found that "fraud is so inextricably woven into the statute as to clearly be an ingredient in the

8    crime," ruled that Mr. Tall's convictions were crimes of moral turpitude, and ordered him removed,

9    charging that he was removable because he had been convicted of a crime involving moral turpitude

10   under the INA. *Id.* The Board of Immigration Appeals upheld the Immigration Judge's decision,

11   and Mr. Tall appealed to the Ninth Circuit. *Id.*

12       The Ninth Circuit applied the categorical approach to determine whether Mr. Tall was convicted

13   of a crime of moral turpitude. *Id.* at 1119. The Ninth Circuit concluded that California Penal Code

14   § 350—which prohibits the willful manufacture, the intentional sale, or the knowing possession of

15   any counterfeit mark—is an inherently fraudulent crime. *Id.* at 1119-20.

16       "Crimes of moral turpitude are of basically two types, those involving fraud and
     those involving grave acts of baseness or depravity." *Navarro-Lopez*, 503 F.3d at
17   1074 (Reinhardt, J. concurring for a majority of the court) (quoting *Carty v. Ashcroft*,
     395 F.3d 1081, 1083 (9th Cir. 2005)). "A crime having as an element the intent to
18   defraud is clearly a crime involving moral turpitude." *Id.* (internal quotation
     omitted). A crime whose nature is "inherently fraudulent" also qualifies as a crime of
19   moral turpitude. *Id.* at 1076; *see also Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir.
     1993). "Our cases hold that in order to be inherently fraudulent, a crime must involve
20   knowingly false representations made in order to gain something of value."
     *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J. concurring for a majority of the
21   court).

22       California Penal Code § 350(a) punishes "[a]ny person who willfully
     manufactures, intentionally sells, or knowingly possesses for sale any counterfeit of a
23   mark registered with the Secretary of State or registered on the Principal Register of
     the United States Patent and Trademark Office." The statute defines "counterfeit
24   mark" as "a spurious mark that is identical with, or confusingly similar to, a

25   _____

26       [7] Mr. Tall pleaded guilty to one count in October 2003 and was placed on probation, and he

27   pleaded guilty to nine new counts in December 2004 and was sentenced to two years for the new
     counts and a two-year concurrent sentence for the revocation of his probation for the earlier

28   conviction. *Tall*, 517 F.3d at 1117-18. In May 2003, he had been paroled into the United States for
     a year to pursue an application for an adjustment of status. *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

1    registered mark and is used on or in connection with the same type of goods or
     services for which the genuine mark is registered."  § 350(e)(2).
2

3        Under the categorical approach, § 350(a) is a crime involving moral turpitude
     because it is an inherently fraudulent crime.  Either an innocent purchaser is tricked
     into buying a fake item; or even if the purchaser knows the item is counterfeit, the
4    owner of the mark has been robbed of its value.  The crime is really a species of theft.
     All of the conduct punished by § 350(a), "willfully manufactur[ing], intentionally
5    sell[ing], or knowingly possess[ing] for sale any counterfeit . . . mark," is inherently
     fraudulent because each type of conduct "involve[s] knowingly false representations
6    made in order to gain something of value."  *Navarro-Lopez*, 503 F.3d at 1076.  The
     commission of the crime necessarily defrauds the owner of the mark, or an innocent
7    purchaser of the counterfeit items, or both.

8    *Id.* at 1119-20.  The Ninth Circuit thus affirmed the Immigration Judge's and BIA's rulings that Mr.

9    Tall was removable.  *Id.* at 1120.

10       California Penal Code § 350(a), while not exactly the same as 18 U.S.C. § 2320(a), generally

11   covers the same kinds of trademark counterfeiting offenses that § 2320(a) does.  And as the Ninth

12   Circuit explained, California Penal Code § 350(a) is an inherently fraudulent crime because "[e]ither

13   an innocent purchaser is tricked into buying a fake item; or even if the purchaser knows the item is

14   counterfeit, the owner of the mark has been robbed of its value."  Under this reasoning, a person

15   convicted of trademark counterfeiting—whether the purchaser knew the goods or services were fake

16   or not—necessarily has engaged in fraudulent or deceitful conduct.  In her opposition and at the

17   December 12, 2013 hearing, Ms. Wang attempted to distinguish *Tall* by pointing out that *Tall*

18   involved  an inquiry about whether a violation of California Penal Code § 350 is a crime involving

19   moral turpitude, whereas the inquiry here involves whether trademark counterfeiting is a crime

20   involving fraud or deceit.  This is true, but it is not *Tall*'s holding—that California Penal Code § 350

21   is a crime involving moral turpitude—that the court follows; it is *Tall*'s reasoning.  And in the

22   absence of any on-point legal authority on this issue, the court believes that *Tall*'s reasoning—that

23   trademark counterfeiting is an inherently fraudulent crime—is relevant to this inquiry as well and

24   supports a finding that a violation of 18 U.S.C. § 2320(a) necessarily "involves fraud or deceit."

25   Accordingly, and applying the categorical approach, the court finds that a violation of 18 U.S.C. §

26   2320(a) necessarily "involves fraud or deceit."[8]

27   _____

28       [8] The court notes that the Third and Ninth Circuits also have found criminal trademark
     counterfeiting convictions to be aggravated felonies under 8 U.S.C. § 1101(a)(43)(R), which defines

C12-06367 LB                                          13
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

**B.  The Victim of Ms. Wang's Crime Lost more than $10,000**

To determine whether Ms. Wang's conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), the court also must determine whether the victim of her offense lost more than $10,000.  Ms. Wang's motion does not address this issue, but Respondents addressed it in theirs. *See* Respondents' Motion, ECF No. 28 at 16-17.

The Supreme Court held in *Nijhawan v. Holder*, 557 U.S. 29 (2009), that the monetary threshold in § 1101(a)(43)(M)(i) "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion," rather than to an element of the fraud or deceit crime.  *Nijhawan*, 557 U.S. at 40 (concluding that where defendant's own stipulation, produced for sentencing purposes, involved losses considerably greater than $10,000, and the court's restitution order showed the same, clear and convincing evidence supported conclusion that conviction fell within the scope of § 1101(a)(43)(M)(i)).  And in determining the amount of loss, the court is not limited to the record of conviction as it would be under the modified categorical approach.  *Id.* at 40-42.  Even so, her record of conviction provides ample evidence.  Ms. Wang agreed in her plea agreement that "the total value of the counterfeit products with counterfeit marks that [she was] responsible for selling and possessing [was] $446,164, which is also the amount that should be used to determine the loss amount . . . in the Sentencing Guidelines."  Plea Agreement, ECF No. 28-6, ¶ 2(b); *see also* JSUF, ECF No. 27-1, ¶ 5.  That loss figure includes actual sales of $93,611 ($198 for 6 copies of Windows 95 and $93,473 to DA Com), which is the amount she agreed to pay in restitution to her victim, Microsoft.  Plea Agreement, ECF No. 28-6, ¶ 11; *see also* JSUF, ECF No. 27-1, ¶ 3.  Ms. Wang's plea agreement thus provides sufficient (and uncontested) evidence to

---

an aggravated felony as "an offense relating to . . . counterfeiting . . . for which the term of imprisonment is at least a year."  *See Rodriguez-Valencia v. Holder*, 652 F.3d 1157, 1159 (9th Cir. 2011) (per curiam) (relying on *Tall* for the point that generic counterfeiting is an inherently fraudulent crime and holding that California's criminal trademark counterfeiting statute also is an aggravated felony under 8 U.S.C. § 101(a)(43)(R); Petitioner's convictions were for "willfully manufacturing, intentionally selling, and knowingly possession for sale more than 1,000 articles bearing a counterfeit trademark"); *Yong Wong Park v. Attorney General of the United States*, 472 F.3d 66, 73 (3rd Cir. 2006) (a violation of 18 U.S.C. § 2320(a) is an aggravated felony under 8 U.S.C. § 1101(a)(43)(R)).  Section 1101(a)(43)(R) did not apply here because Ms. Wang received a sentence that was less than a year.

1  demonstrate that her conduct caused a loss to her victim of well over $10,000.

2      Accordingly, because the court finds that Ms. Wang's conviction under 18 U.S.C. § 2320(a)

3  involved fraud of deceit and that her victim lost more than $10,000 as a result of her crime, the court

4  concludes that Ms. Wang was convicted of an "aggravated felony" under 8 U.S.C. §

5  1101(a)(43)(M)(i).[9]

6                                          **CONCLUSION**

7      The court finds that Ms. Wang's conviction under 18 U.S.C. § 2320(a) involved fraud of deceit

8  and that her victim lost more than $10,000 as a result of her crime.  The court thus concludes that

9  Ms. Wang was convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M)(i).

10  Accordingly, the court **DENIES** Ms. Wang's motion for summary judgment and **GRANTS**

11  Respondents' motion for summary judgment.

12      This disposes of ECF Nos. 27 and 28.

13      **IT IS SO ORDERED.**

14  Dated: December 13, 2013

15                                          _____
                                           LAUREL BEELER
                                           United States Magistrate Judge

---

[9] Because the court finds, after applying the categorical approach, that Ms. Wang's conviction is an aggravated felony under the INA, the court need not also apply the modified categorical approach or address the parties' arguments about it. *See* Ms. Wang's Motion, ECF No. 27 at 7-8; Respondents' Motion, ECF No. 28 at 15-16.